**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAREN LOGAN,

*Plaintiff-Appellant,*

v.

U.S. BANK NATIONAL ASSOCIATION,
as Trustee,

*Defendant-Appellee.*

No. 10-55671

D.C. No.
2:09-cv-08950-
MMM-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
January 10, 2013—Pasadena, California

Filed July 16, 2013

Before: M. Margaret McKeown and Milan D. Smith, Jr.,
Circuit Judges, and Robert Holmes Bell, District Judge.[*]

Opinion by Judge McKeown

---

[*] The Honorable Robert Holmes Bell, District Judge for the U.S. District Court for the Western District of Michigan, sitting by designation.

## SUMMARY[**]

**Protecting Tenants at Foreclosure Act**

Affirming the dismissal of a complaint seeking damages and injunctive relief against a bank that filed an unlawful detainer action against the tenant of a former owner of foreclosed property, the panel held that there is no private right of action under the Protecting Tenants at Foreclosure Act of 2009.

The panel held that, despite the bank's voluntary dismissal of the unlawful detainer action, the appeal was not moot because the bank did not show that it was absolutely clear that the allegedly wrongful eviction could not reasonably be expected to recur.

Agreeing with the Third Circuit, the panel held that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), from the exercise of jurisdiction over the claim for injunctive relief was not warranted because the state detainer action did not implicate important state interests.

Finally, the panel held that the tenant did not have a cognizable claim under the Protecting Tenants at Foreclosure Act because the Act does not, either explicitly or by implication, evince a congressional intent to create a private right of action.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jay D. Trickett (argued), Arne D. Wagner, and James A. Quadra, Calvo & Clark, LLP, San Francisco, California, for Plaintiff-Appellant.

Thomas H. Dupree, Jr. (argued), Gibson, Dunn & Crutcher LLP, Washington, D.C.; Theane Evangelis Kapur, Andrew G. Pappas, Gibson, Dunn & Crutcher LLP, Los Angeles, California; John M. Sorich, S. Christopher Yoo, and Jenny L. Merris, Adorno Yoss Alvarado & Smith, Santa Ana, California, for Defendant-Appellee.

Kent Qian, National Housing Law Project, Oakland, California; Samantha Tuttle, Sargent Shriver National Center on Poverty Law, Chicago, Illinois, for Amicus Curiae National Housing Law Project, Sargent Shriver National Center on Poverty Law, Public Justice Center, National Law Center on Homelessness and Poverty, Tenants Together, Legal Services of Northern California, Housing and Economic Rights Advocates, Housing Umbrella Group, and Community Legal Services.

**OPINION**

McKEOWN, Circuit Judge:

We consider here an issue of first impression—whether the Protecting Tenants at Foreclosure Act of 2009 ("PTFA" or "the Act") provides a private right of action. Pub. L. No. 111-22, § 701–04, 123 Stat. 1632, 1660–62 (2009). Karen Logan sought injunctive relief and damages against U.S. Bank National Association ("US Bank") after it filed an

unlawful detainer action against her in state court without giving 90 days notice to vacate the foreclosed property as required by the Act. Although we disagree with the district court's abstention from exercising jurisdiction over Logan's injunctive relief claim under *Younger v. Harris*, 401 U.S. 37 (1971), we nevertheless affirm dismissal of the complaint because the Act does not create a private right of action allowing Logan to enforce its requirements.

## BACKGROUND

Logan claims that she was the tenant of the former owner of a property located in Westlake Village, California.[1] US Bank took title to the property at foreclosure in June 2009. According to Logan, US Bank served her with a three-day notice of termination and then immediately initiated an unlawful detainer action in Los Angeles Superior Court. Logan alleges that these actions contravened the PTFA, which required US Bank to serve a 90-day notice of termination prior to eviction.

After the unlawful detainer action was initiated in June 2009, Logan filed a demurrer raising the PTFA issue, but the demurrer was overruled. Logan twice attempted, albeit unsuccessfully, to remove the unlawful detainer action to federal court.

---

[1] We treat facts alleged in Logan's complaint as true for purposes of evaluating the dismissal for lack of subject matter jurisdiction. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005). Consequently, we do not address the factual dispute arising from US Bank's contention that Logan was married to the former owner at the time of the foreclosure and thus not a "bona fide tenant" protected by the PTFA.

Logan filed her action in federal court in December 2009, seeking "temporary, preliminary, and permanent injunctive relief compelling obediance [sic] to the Federal Law," as well as damages. The district court dismissed the complaint, concluding that *Younger v. Harris* required it to abstain from exercising jurisdiction because Logan sought to enjoin an action that was pending in state court at the time she filed her case in federal court. The district court further reasoned that it did not have subject matter jurisdiction over Logan's claim for damages under the PTFA because the Act does not create a private right of action.

## ANALYSIS

## I. MOOTNESS

As a threshold matter, we address whether Logan's appeal is moot given US Bank's voluntary dismissal of the unlawful detainer action in February 2010, just two months before she filed this appeal. Article III of the Constitution limits federal courts to the adjudication of actual, ongoing cases or controversies between litigants. If a "live" controversy ceases to exist because of changed circumstances after the complaint is filed, the claim is moot and no longer justiciable. *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006). However, when the basis for mootness is defendant's voluntary conduct, a federal court is not "deprive[d] . . . of its power to determine the legality of the practice," leaving the defendant "free to return to [its] old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citations omitted). Rather, the defendant must "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be

expected to recur." *Id.* at 190 (citing *United States v. Concentrated Phosphate Export Ass'n.*, 393 U.S. 199, 203 (1968)).

US Bank has not met this formidable burden. Its voluntary dismissal of the unlawful detainer action without prejudice does not make it "absolutely clear" that the alleged wrongful eviction "could not reasonably be expected to recur." *Id.* The bank has offered no evidence or reassurance that it either could not or would not reinitiate the unlawful detainer action against Logan at another time, should she remain in possession of the property. Additionally, even if the request for injunctive relief were moot, Logan's pursuit of monetary relief ensures that the case "remains definite and concrete, touching the legal relations of parties having adverse legal interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982) (internal quotation marks and citation omitted). Dismissal of the state unlawful detainer proceedings did not moot Logan's claim.

## II. *YOUNGER* ABSTENTION

As a general rule, a federal court has a "virtually unflagging obligation" to adjudicate controversies properly before it. *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (internal quotation marks and citation omitted). In carrying out this duty, federal courts "may well affect, or for practical purposes pre-empt" a pending state court action, but "there is no doctrine that . . . the pendency of state judicial proceedings excludes the federal courts." *New Orleans Pub. Serv. Inc.* ("*NOPSI*") *v. Council of New Orleans*, 491 U.S. 350, 373 (1989). To the contrary, a pending action in state court is generally "no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

Against this backdrop, the Supreme Court has carved out an "'extraordinary and narrow exception.'" *Colo. River Water Conservation*, 424 U.S. at 813 (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). In *Younger v. Harris*, the Supreme Court held that a federal court may not interfere with a pending state criminal prosecution absent extraordinary circumstances. 401 U.S. 43–54. This principle has also been extended to limited classes of civil proceedings. *See NOPSI*, 491 U.S. at 367–68. For example, in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), the Supreme Court applied *Younger* abstention to state attorney disciplinary proceedings, but was careful to limit its application in the non-criminal context to those cases where (1) there is an ongoing state proceeding, (2) the state proceeding implicates important state interests, and (3) the state proceeding provides an adequate opportunity to raise federal questions. Interpreting the Supreme Court's directive, the Ninth Circuit has emphasized another criterion: (4) that the federal action would enjoin the state proceeding or have the practical effect of doing so. *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008). All four elements must be satisfied to warrant abstention. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).

US Bank's unlawful detainer action meets three of the four requirements. To begin, there was an ongoing proceeding in state court when Logan filed the federal action in December 2009. Although US Bank later voluntarily dismissed the state action without prejudice in February 2010,

the relevant date for evaluating abstention is the date the federal action is filed. *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004) (en banc); *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987) ("[T]he critical question is not whether the state proceedings are still ongoing, but whether the state proceedings were underway before initiation of the federal proceedings.") (internal quotation marks and citation omitted).   Second, Logan had the opportunity to litigate her federal question in state court. Although she was unsuccessful, the pertinent inquiry in the abstention context is whether plaintiffs' federal claims "could have been raised in the pending state proceedings." *Moore v. Sims*, 442 U.S. 415, 425 (1979).  Logan also meets the third prong:  The purpose of her federal action is either to enjoin the state proceeding directly or to have the practical effect of doing so by limiting US Bank's ability to pursue its state court action.

Despite satisfying these three requirements, abstention is not warranted because the state unlawful detainer action does not implicate "important state interests."  Notwithstanding its apparent breadth, that tag line is not an invitation to abstain simply because a suit implicates a state law, even one involving a traditional state concern.   While recognizing important state interests in a number of civil proceedings, "neither we nor the Supreme Court has held *Younger* to apply generally to ordinary civil litigation." *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882 (9th Cir. 2011).  In *Middlesex*, the Supreme Court offered three types of civil proceedings in which a state might have a vital interest:  non-criminal proceedings that "bear a close relationship to proceedings criminal in nature," "[p]roceedings necessary for the vindication of important state policies," and "[p]roceedings necessary . . . for the functioning of the state

judicial system." 457 U.S. at 432. The first two categories implicate the state's executive interest and encompass cases in which the state or an agent of the state is a party "in an enforcement posture," *Potrero Hills Landfill*, 657 F.3d at 883.[2] The third category encompasses cases—including those between private parties—where the operation of the state judicial system is itself at issue.[3]

An unlawful detainer action does not fall into any of these categories. Obviously it does not bear a close relationship to proceedings that are criminal in nature, nor does it implicate the functioning of the state judicial system. The only question for discussion is whether the suit vindicates important state interests or policies. But the eviction action does not fit in that category either because it is garden variety civil litigation between private parties, not a state enforcement action.

---

[2] *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986) (pending administrative proceeding in which the state civil rights commission was enforcing its employment anti-discrimination laws); *Middlesex*, 457 U.S. 423 (pending disciplinary proceeding in which the local county ethics committee was maintaining the professional conduct of the attorneys it licenses); *Moore v. Sims*, 442 U.S. 415 (1979) (pending state proceeding in which the Texas Department of Human Resources was enforcing its child abuse laws); *Trainor v. Hernandez*, 431 U.S. 434 (1977) (pending suit in which the Illinois Department of Public Aid sought the return of welfare payments allegedly wrongfully received); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (pending state nuisance proceeding instituted by sheriff and prosecuting attorney).

[3] *See, e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14 (1987) (holding that a federal court may not enjoin execution of a state court judgment pending appeal of that judgment to a state appellate court); *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (holding that a federal court may not enjoin the state's contempt process because "[t]he contempt power lies at the core of the administration of a State's judicial system").

It is not enough that the state court action concerns real property transfers, leasehold estates, and tenant rights, all of which are historically the domain of state regulation. "[I]t is not the bare subject matter of the underlying state law that . . . determine[s] whether the state proceeding implicates an 'important state interest' for *Younger* purposes." *Potrero Hills Landfill*, 657 F.3d at 884. Instead, "the content of state laws becomes 'important' for *Younger* purposes only when coupled with the state executive's interest in enforcing such laws" or the state judiciary's interest in the operation of the judicial system. *Id.* at 884–86; *see also Cate v. Oldham*, 707 F.2d 1176, 1183 (11th Cir. 1983) ("Application of the *Younger* doctrine to ongoing state civil proceedings has been limited to those civil actions in aid of criminal jurisdiction or involving enforcement-type proceedings in which vital interests of the state *qua* state are involved."). By contrast, the unlawful detainer action here is simply a private dispute between two private parties over possession of a property. The state has not stepped in as a party to enforce its tenancy laws, and no core aspect of the administration of the state's judicial system is at issue.[4]  This is not to say that the state

---

[4] This case is distinct from *Goldie's Bookstore, Inc. v. Superior Court of State of California*, 739 F.2d 466, 467–68 (9th Cir. 1984), where a sublessee brought an action against a California Superior Court, a county sheriff, a county marshal, and others, seeking a preliminary injunction against enforcement of a state unlawful detainer judgment. There we held that California did not have an important interest in enforcing a state detainer judgment for purposes of *Younger* abstention. *Id.* at 470. *Goldie's Bookstore* was later called into question after the Supreme Court decided in *Pennzoil* that a state has an important interest in executing state court judgments. *See Lebbos v. Judges of the Superior Court, Santa Clara Cnty.*, 883 F.2d 810, 815 n.6 (9th Cir. 1989) ("Our conclusion in [*Goldie's Bookstore*] that the proceedings did not implicate important state interests appears to have been substantially undermined by the Supreme Court's holding in *Pennzoil*.") (internal citation omitted). We do not take a

does not have a significant interest in protecting tenants, only that such interest does not warrant abstention.

Although the district court cited to several district court decisions holding that "unlawful detainer actions represent a sufficient state interest to warrant *Younger* abstention," we are not persuaded. *Logan v. U.S. Bank Nat'l Ass'n*, No. CV 09-08950, 2010 WL 1444878, at *3 (C.D. Cal. April 12, 2010); *see, e.g.*, *McGlothin v. Santos*, No. 1:08cv1290, 2008 WL 5135996, at *6 (E.D. Cal. Dec. 8, 2008); *Hicks v. Superior Court of Cal., Cnty. of Kern*, No. 08-cv-0207, 2008 WL 638544, at *5 (E.D. Cal. March 5, 2008). Those decisions, like the district court's decision here, fall prey to the logic that the state has a significant concern simply because property law, including eviction, has long been a state concern. The difficulty with this assumption is that it would require federal courts to abstain from state litigation in virtually every area of state law—from consumer protection to real estate—even where the dispute is purely private. We agree with the Third Circuit that the regulation of eviction proceedings "does not implicate an important state interest" under *Younger*. *Ayers v. Phila. Hous. Auth.*, 908 F.2d 1184, 1195 n.21 (3d Cir. 1990) (holding that an eviction action brought by Philadelphia's city housing authority did not implicate an important state interest).

position on whether US Bank's unlawful detainer action would implicate an important state interest if US Bank had already obtained a favorable judgment and Logan sought to enjoin its enforcement, as was the factual scenario in *Goldie's Bookstore*. Suffice it to say that there is no state court judgment at issue here, and no concern about interfering with the execution of state court judgments.

### III.   NO PRIVATE RIGHT OF ACTION UNDER THE PROTECTING TENANTS AT   FORECLOSURE ACT

Although Logan's claims are neither moot nor precluded by *Younger*, they fail because she has no cognizable claim under the PTFA. The Supreme Court has repeatedly held that private rights of action, like substantive federal law itself, must be created by Congress. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Our challenge is to determine whether the PTFA, either explicitly or by implication, evinces a congressional intent to create a private right of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Without clear evidence of such intent, courts may not create a cause of action "no matter how desirable . . . as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87. This issue is a question of first impression for this court, but a number of district courts within this circuit have held that there is no such right. *See, e.g.*, *Wells Fargo Bank v. Lapeen*, No. C11-01932, 2011 WL 2194117, at \*1 (N.D. Cal. June 6, 2011) (concluding that "the PTFA only provides tenants with federal defenses to eviction but does not create a federal ejectment claim or any private right of action"); *Nativi v. Deutsche Bank Nat'l Trust Co.*, No. 09-06096, 2010 WL 2179885, at \*2–5 (N.D. Cal. May 26, 2010) (holding that the PTFA does not provide for an implied private right of action). We conclude that the statute neither explicitly nor impliedly creates a private right of action allowing Logan to enforce the PTFA.

Section 702(a) of the PTFA provides:

> In the case of any foreclosure on a federally-related mortgage loan or on any

dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to—

(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and

(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure—

> (A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or

> (B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1).

PTFA § 702(a).

The parties acknowledge that the statute does not explicitly create a private cause of action because nothing in

the text of § 702(a) references the availability of any action to enforce the statute's provisions, describes a forum in which an enforcement suit may be brought, or identifies a plaintiff for whom such a forum is available. Accordingly, any private right of action within § 702(a) must be implied from the statute's language, structure, context, and legislative history. *See Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 836 (9th Cir. 2004).

In *Cort v. Ash*, the Supreme Court identified four factors that are relevant for determining whether a private remedy is implicit in a statute not expressly providing one: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether an implied private cause of action for the plaintiff is "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action is "one traditionally relegated to state law . . . so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. 66, 78 (1975) (internal quotation marks and citations omitted). The *Cort* test replaced the understanding of private rights of action that had previously held sway—that "'it [was] the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose' expressed by a statute." *Sandoval*, 532 U.S. at 287 (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). *Cort* represented a "retreat[] from [the Supreme Court's] previous willingness to imply a cause of action where Congress ha[d] not provided one." *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001).

In later cases, the Supreme Court essentially collapsed the *Cort* test into a single focus: "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross*, 442 U.S. at 575; *see also Cal. v. Sierra Club*, 451 U.S. 287, 293 (1981) ("[T]he ultimate issue is whether Congress intended to create a private right of action."); *Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) ("[W]e effectively overruled the *Cort v. Ash* analysis in [*Touche Ross*] . . . converting one of its four factors (congressional intent) into *the determinative factor. . . .*") (emphasis in original).  Nonetheless, our court has found the four factor test helpful, and has continued to employ it to "guide [the] central project of discerning Congress's intent." *Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007).

Because the Supreme Court has elevated intent into a supreme factor, we start there and do not feel constrained by the *Cort* framework.[5]   As with any case involving congressional intent, we presume that Congress expressed its intent through the statutory language it chose. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  We begin our search for congressional intent with the language and structure of the statute, and then look to legislative history only if the language is unclear, *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 389 (9th Cir. 1994), or if there is a clearly expressed contrary intention in the legislative history that

---

[5] We also point out that the validity of the fourth *Cort* factor—whether the cause of action is one traditionally relegated to state law—has been called into question.  *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1127 (9th Cir. 2000).  Regardless, considering it would not alter our conclusion.  Traditionally, leases and eviction proceedings are uniquely state law matters such that "it would be inappropriate to infer a cause of action based solely on federal law."  *Cort*, 422 U.S. at 78.

may overcome the strong presumption that the statutory language represents congressional intent, *Flores-Arellano v. I.N.S.*, 5 F.3d 360, 362 (9th Cir. 1993).

Nothing in the language and structure of § 702(a) reflects a clear and unambiguous intent to create a private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002) ("[C]lear and unambiguous terms" are "required for Congress to create new rights enforceable under an implied private right of action."). The difficulty for Logan is that the PTFA focuses on the "immediate successor in interest" in the property—in other words, the regulated party. Section 702(a) is framed in terms of the obligations imposed on the regulated party ("any immediate successor in interest . . . shall assume such interest subject to . . ."), while the "bona fide tenant" is referenced only as an object of that obligation. Statutes containing general proscriptions of activities or focusing on the regulated party rather than the class of beneficiaries whose welfare Congress intended to further "do[] not indicate an intent to provide for private rights of action." *Sierra Club*, 451 U.S. at 294; *see also Sandoval*, 532 U.S. at 289.

Nor does the PTFA place Logan into a class for whose "especial" benefit the statute was enacted. An "*especial*" beneficiary is not "simply [one] who would benefit from the Act"—otherwise, the victim of any crime would be an especial beneficiary of the criminal statute's proscription. *Sierra Club*, 451 U.S. at 293–94 (emphasis in original). It is true that tenants would benefit from the Act's requirements to provide 90 days' notice to vacate and to allow tenants to continue occupying the premises until the end of the remaining lease term, but the conferral of benefits is not enough. *Id.* at 294 ("The question is not simply who would benefit from the Act, but whether Congress intended to confer

federal rights upon those beneficiaries.") (citation omitted). Section 702's focus on the parties regulated rather than the individuals ultimately benefited by the statute weighs against implication of a private right of action.

Logan argues that the title of the statute—"Protecting Tenants at Foreclosure Act of 2009"—evinces sufficient congressional intent to create a federal right in favor of tenants of foreclosed properties.  But, here, the title does no work in divining intent.  Though a statute's title "can be used to resolve[] ambiguity," it "cannot control the plain meaning of a statute."  *Oregon Pub. Util. Comm'n v. I.C.C.*, 979 F.2d 778, 780 (9th Cir. 1992).

Looking to the overall statutory scheme, we discover that PTFA is part of a larger framework in which Congress did provide a private cause of action for a different specified claim.  The PTFA was enacted as part of the Helping Families Save Their Homes Act of 2009 ("the Homes Act"). Pub. L. No. 111-22, § 1(a), 123 Stat. 1632, 1632 (2009) (Division A, under which the PTFA appears as Title VII, §§ 701–04, "may be cited as the 'Helping Families Save Their Homes Act of 2009.'").  Section 404(a) of the Homes Act added a notice requirement to the Truth in Lending Act, 15 U.S.C. § 1641, under which a new creditor must notify the borrower in writing of certain information no later than 30 days after a mortgage loan is transferred or assigned. § 404(a), 123 Stat. at 1658.  Section 404(b) then explicitly amended the private right of action provision of the Truth in Lending Act, 15 U.S.C. § 1640(a), allowing "any person" to sue a creditor who fails to comply with the newly enacted notice requirement or other requirements under the Act for damages.  § 404(b), 123 Stat. at 1658.

No such language accompanies § 702. Where a statutory scheme contains a particular express remedy or remedies, "a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Because Congress included an express provision for private enforcement under one section of the Homes Act, it is "highly improbable that Congress absentmindedly forgot to mention an intended private action" in the PTFA section. *Id.* at 20 (internal quotation marks and citation omitted); *see also In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1232 (9th Cir. 2008) ("Where analogous provisions expressly provide for a private right of action, we must infer that Congress did not intend to create a private right of action in the statutory section at issue.") (internal quotation marks and citation omitted).

The legislative history of § 702(a) reinforces our decision not to imply a private right of action. Like the statutory language itself, the legislative history emphasizes compliance by landlords and foreclosing lenders. Then-Senator John Kerry, the bill's primary drafter, proclaimed: "A landlord should not be allowed to come in, change the locks, and force out tenants who were there completely legitimately, with an expectation that they were coming home to their same old home." 155 Cong. Rec. S5111 (daily ed. May 5, 2009). After passage of the legislation, Senator Kerry praised the Federal Reserve and the Department of Housing and Urban Development for quickly issuing notifications outlining "how regulated institutions are expected to comply with the terms of the act." 155 Cong. Rec. S8978 (daily ed. Aug. 6, 2009).

Although the legislative history underscores that the statute's ultimate purpose is to benefit tenants, s*ee, e.g.*, 155 Cong. Rec. S5097 (daily ed. May 5, 2009) ("I am

offering this amendment to address the needs of renters in properties that have been foreclosed.") (statement of Sen. John Kerry), it is silent as to any right or remedy for tenants. Where the statutory language and structure do not indicate a congressional intent to create a private right of action, "silent legislative history precludes further inquiry." *Helfer*, 224 F.3d at 1125 (citing *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981)). When the PTFA was amended in July 2010 to clarify the statute and extend its application, once again Congress was silent—both in the text and in legislative history—with regard to any private right of action. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, § 1484, 124 Stat. 1376, 2204 (2010). By the time of the amendment, several courts had determined that no private remedy existed under the PTFA. *See, e.g.*, *Claremont 1st Street Investors v. Espinoza*, No. CV10-3532, 2010 WL 2486804 (C.D. Cal. June 15, 2010) (concluding that there is no private right of action); *Nativi*, 2010 WL 2179885 (same); *Bank of America, N.A. v. Owens*, 903 N.Y.S.2d 667 (Rochester City Ct. 2010) (same). We must presume that Congress acted with awareness of these judicial decisions. *See United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1065 (9th Cir. 2007).

Finally, we note that the PTFA's nationwide federal policy and requirements are not rendered unenforceable by the absence of a federal private right of action. *See Helfer*, 224 F.3d at 1126 (explaining that where Congress or an administrative agency provided no explicit enforcement mechanism, "it is appropriate to infer that Congress did not intend to enact unenforceable requirements"). The PTFA is framed in terms of "protections" for tenants, suggesting that it was intended to provide a defense in state eviction proceedings rather than a basis for offensive suits in federal

court.  Notice requirements are typically elements of unlawful detainer actions that can be employed to challenge a state eviction proceeding by showing that the notice requirement was not met.  *See, e.g.*, Cal. Code Civ. Proc. § 1161 (requiring three days' notice to be served on the tenant in writing containing specified information); Nev. Rev. Stat. § 40.2516 (requiring five days' notice to be served on the tenant in writing).  Amici argue that defense of a state eviction action would be inadequate to enforce the PTFA in states that allow the purchaser at a foreclosure sale to remove a tenant without judicial process.  While we are troubled by such a possibility, we have not been presented with concrete facts in this case that allow us to evaluate that scenario.  Nor can this policy consideration override congressional intent not to incorporate a private right of action.  The intent of Congress remains the "ultimate issue." *Thompson*, 484 U.S. at 179.  Because we cannot infer a congressional intent to create a private right of action from the language of the statute, the statutory structure, or any other source, "the essential predicate for implication of a private remedy simply does not exist."  *Id*. (internal quotation marks and citation omitted).  The district court's dismissal of Logan's complaint is **AFFIRMED.**