**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UFCW LOCAL 1500 PENSION FUND, on behalf of itself and all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> MARISSA MAYER; DAVID FILO; SUE JAMES; THOMAS J. MCINERNEY; CHARLES R. SCHWAB; H. LEE SCOTT, JR.; KENNETH A. GOLDMAN; RONALD S. BELL; HENRIQUE DE CASTRO; MAX R. LEVCHIN; JANE E. SHAW; MAYNARD WEBB, JR.; YAHOO! INC., Nominal Defendant, *Defendants-Appellees*. | No. 17-15435 <br><br> D.C. No. 3:16-cv-00478-RS <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted June 13, 2018
San Francisco, California

Filed July 12, 2018

Before:  Mary M. Schroeder, David M. Ebel,[*]
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[**]

### Investment Company Act

The panel affirmed the district court's dismissal of a lawsuit bringing derivative claims against Yahoo! Inc.'s board of directors and certain corporate officers, as well as one direct claim against Yahoo!, under the Investment Company Act.

The plaintiff alleged that when Yahoo! invested in Alibaba.com, a Chinese retail website, Yahoo! violated the conditions of its exemption, granted by the Securities and Exchange Commission, from the registration requirements of the ICA.  The panel held that the plaintiff failed to state a claim because the ICA does not establish a private right of action for challenging the continued validity of an ICA exemption.

---

[*] The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Richard L. Stone (argued), Blackner Stone & Associates PA, Palm Beach, Florida; Ira M. Press and Peter S. Linden, Kirby McInerney LLP, New York, New York; for Plaintiff-Appellant.

Mark R. S. Foster (argued), Joshua A. Korr, and Jordan Eth, Morrison & Foerster LLP, San Francisco, California, for Defendants-Appellees.

## OPINION

OWENS, Circuit Judge:

Plaintiff-Appellant UFCW Local 1500 Pension Fund ("UFCW") appeals from the district court's dismissal of a lawsuit bringing derivative claims against Yahoo! Inc.'s board of directors and certain corporate officers, as well as one direct claim against Yahoo!. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

### A.  Yahoo!, Alibaba, and the ICA

Back in 1995, Yahoo! helped pioneer what the Supreme Court calls "the Cyber Age." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017). Using (for its time) cutting-edge technology, Yahoo! enabled people to visit websites previously inaccessible except to the most internet savvy. Its promise as an internet search company was so bright, in fact, that the 2000 movie *Frequency* featured Yahoo! as the stock for the next millennium.

Of course, Hollywood doesn't always get it right. Although Yahoo! has fared better than dot-com busts like eToys and Pets.com, Yahoo!'s search engine technology turned out to be closer in value to the Ark of the Covenant at the end of *Raiders of the Lost Ark* than the Apple stock that Lieutenant Dan purchased in *Forrest Gump*. Today we "Google" things—we do not "Yahoo!" them (or "Alta Vista," "Excite," or "Dogpile" them for that matter). But during its marketplace decline this century, Yahoo! made a savvy $1 billion investment in Alibaba.com, a Chinese retail website.

Alibaba burgeoned into a behemoth. Alibaba was so successful that by 2012 Yahoo! was able to sell just over half of its Alibaba stock for $7.1 billion. And when Alibaba conducted its initial public offering in 2014, $9.4 billion more flowed into Yahoo!'s coffers essentially overnight. By 2016, Yahoo!'s remaining stake in Alibaba was worth some $27 billion. That figure dwarfed the value of Yahoo!'s internet business.

Investments in Alibaba and other ventures (such as Yahoo! Japan) would normally subject Yahoo! to the requirements of the Investment Company Act of 1940 ("ICA"). The ICA permits the Securities and Exchange Commission ("the SEC" or "the Commission") to regulate more rigorously the activities of enterprises that qualify as investment companies under section 3(a) of the statute. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1109–12 (9th Cir. 2010) (detailing the ICA and describing it as "provid[ing] comprehensive regulation of investment companies and the mutual fund industry"); *see also* 15 U.S.C. § 80a-3(a). Such enterprises must register with the SEC. If they do not, section 7(a) forbids them from,

among other things, "engag[ing] in any business in interstate commerce." *Id.* § 80a-7(a)(4).

Any would-be investment company can try to avoid the ICA's registration requirements, however. Section 3(b)(2) empowers the SEC, "upon application," to exempt such a company from the ICA's requirements, if the SEC "finds and by order declares" the company "to be primarily engaged in a business or businesses other than that of investing, reinvesting, owning, holding, or trading in securities." *Id.* § 80a-3(b)(2). But what the SEC giveth, the SEC taketh away. Section 3(b)(2) further provides that, "[w]henever the Commission, upon its own motion or upon application, finds that the circumstances which gave rise to the issuance of an order granting an application [for an ICA exemption] no longer exist, the Commission shall by order revoke" the exemption. *Id.*

After entering into a joint venture to create Yahoo! Japan, Yahoo! applied for an ICA exemption from the SEC. The SEC granted Yahoo! a "temporary exemption" in April 2000 and then issued a "permanent order" exempting Yahoo! from the ICA a few months later. Yahoo!'s ICA exemption came with strings attached. Yahoo! could only make investments "for bona fide business purposes" and had to "refrain from investing or trading in [securities] for short-term speculative purposes." Despite those conditions, Yahoo!'s investment in Alibaba, and filings detailing Yahoo!'s Alibaba holdings, the SEC has not revoked Yahoo!'s ICA exemption.

## B.  This Litigation

UFCW sued in January 2016, alleging that Yahoo! had violated the conditions of its ICA exemption by investing in Alibaba and, as a result, that Yahoo! had "been operating as

an unregistered investment company" in violation of the ICA since at least 2013. Based on that allegation, UFCW brought derivative claims against an array of Yahoo! higher-ups, and one direct claim against Yahoo! itself. UFCW sought to (1) rescind the higher-ups' employment contracts, (2) enjoin Yahoo! from further performing contracts signed in violation of the ICA and from selling any material assets, and (3) recover damages for unjust enrichment.

Despite acknowledging that exempted companies must comply with the conditions of their ICA exemptions, the district court concluded that the ICA provides "no role for the courts to find, in the first instance, that a company should be stripped of its exemption and therefore deemed an unregistered investment company." For that reason, the district court held that UFCW's claims "all fail as a matter of law" and dismissed UFCW's suit.

## II. DISCUSSION

UFCW conceded below and acknowledges on appeal that its claims all rely on the allegation that Yahoo! violated the conditions of its ICA exemption by investing in Alibaba. But because no provision of the ICA establishes a private right of action for challenging the continued validity of an ICA exemption, UFCW's claims fizzle faster than Flooz.com.[1]

---

[1] To the extent UFCW asserts that derivative claims do not require a private right of action, it is mistaken. *See, e.g.*, *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1226 (9th Cir. 2008) (affirming dismissal of derivative claim brought under the Sarbanes-Oxley Act for lack of a private right of action).

## A.  Standard of Review

We review de novo a "decision involving interpretation of a federal statute," *In re Digimarc Corp.*, 549 F.3d at 1229, as we do a dismissal for failure to state a claim, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  In this posture, we must accept as true the operative complaint's allegations and construe them in favor of the nonmoving party, UFCW.  *See id.*  Our review "is limited to the complaint, materials incorporated into the complaint by reference, and matters of which [we] may take judicial notice."  *Id.*

## B.  The ICA Does Not Establish A Private Right of Action to Challenge the Continued Validity of an ICA Exemption

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Congress may so empower litigants expressly or implicitly.  *Northstar*, 615 F.3d at 1115.  But even in the latter circumstance, the "judicial task" remains "to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Sandoval*, 532 U.S. at 286.  Without evidence of a congressional intent to create both a private right and a private remedy, a private right of action "does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.* at 286–87.

To create a private right, a statute must use rights-creating language.  *See id.* at 288.  Language that "focus[es] on the person regulated rather than the individuals protected" will not do.  *Id.* at 289.  Rather, the statute must place "an *unmistakable focus*" on the latter group.  *Ball v. Rodgers*,

492 F.3d 1094, 1106 (9th Cir. 2007) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)); *accord AlohaCare v. Hawaii, Dep't of Human Servs.*, 572 F.3d 740, 746 (9th Cir. 2009). And to create a private remedy, a statute must (at the very least) avoid remedy-foreclosing language. *See In re Digimarc*, 549 F.3d at 1231. Language establishing an express "remedial scheme[]" may "foreclose a[n implied] private [right] of action to enforce even those statutes that admittedly create substantive private rights." *Sandoval*, 532 U.S. at 290. That is because providing for "one method of enforcing" a private right "suggests that Congress intended to preclude others." *Id.*; *see also Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14–15 (1981) (observing that "elaborate enforcement provisions" mean that "it cannot be assumed that Congress intended to authorize by implication additional judicial remedies").

The ICA provisions related to SEC registration and ICA exemptions do not have rights-creating language. Section 7(a) of the ICA commands that "[n]o investment company" shall, among other things, "engage in any business in interstate commerce" unless it registers with the SEC. 15 U.S.C. § 80a-7(a)(4). That language mirrors section 13(a)'s command that "[n]o registered investment company" shall, among other things, "change the nature of its business"—a command that we have already held lacks rights-creating language. *Northstar*, 615 F.3d at 1109–10 (quoting 15 U.S.C. § 80a-13(a)); *id.* at 1115.

Section 3(b)(2) of the ICA is "yet a step further removed" from having rights-creating language, for that provision "focuses neither on the individuals protected nor even on the [parties] being regulated, but on the agenc[y] that will do the regulating"—the SEC. *Sandoval*, 532 U.S.

at 289.  Again, section 3(b)(2) provides that "[w]henever *the Commission*, upon its own motion or upon application, finds that the circumstances which gave rise to [an ICA exemption] no longer exist, *the Commission* shall by order revoke such order."   15 U.S.C. § 80a-3(b)(2) (emphasis added).  That language not only dooms any suggestion that Congress intended to create a private right, it forecloses any private remedy for alleged violations of an ICA exemption beyond (at best) a chance to file with the SEC an "application" for revocation of the exemption, subject to (if anything) deferential judicial review.  *Id.* §§ 80a-3(b)(2), 80a-42(a); *see also* 5 U.S.C. §§ 702, 706 (providing for deferential judicial review of agency findings and conclusions under the Administrative Procedure Act).

UFCW counters that, sections 7 and 3(b)(2) notwithstanding, section 47(b) of the ICA establishes a private right of action for challenging the continued validity of an ICA exemption.  Section 47(b) does no such thing.[2]  As just explained, Congress contemplated that companies would contravene the conditions of ICA exemptions and concluded that the SEC, not the courts, should decide in the first instance what to do when that happens.  Congress has thus "deliberately targeted" the "specific problem[]" alleged here with a "specific solution[]."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Varity Corp. v. Howe,* 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)).  That solution does not include lawsuits challenging the continued validity of ICA exemptions.  So even if section 47(b) could be read as implying a private right of action, section 3(b)(2) would still bar lawsuits like UFCW's under the "well established canon

---

[2] Neither does section 44, as it is merely a jurisdictional provision. *See Northstar*, 615 F.3d at 1117-18; *see also* 15 U.S.C. § 80a-43.

of statutory interpretation" that "the specific governs the general." *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

More fundamentally, though, section 47(b) does not establish a private right of action.[3]  Section 47(b) provides that a "contract that is made, or whose performance involves, a violation of [the ICA], or of any rule, regulation, or order thereunder, is unenforceable by either party" to the contract unless "a court" makes certain findings.  15 U.S.C. § 80a-46(b)(1).  So for a start, that language does not expressly establish a private right of action, as "nothing in the text of the section makes any mention of [one]."  *In re Digimarc*, 549 F.3d at 1230; *see also* 15 U.S.C. § 80a-35(b) (expressly establishing private right of action not applicable here by providing that "[a]n action may be brought").  Instead, section 47(b) on its face merely establishes what it says: that contracts formed in violation of the ICA are usually unenforceable.  *See, e.g.*, *Santomenno*, 677 F.3d at 186–87.

UFCW would nevertheless have us read section 47(b) as implying a private right of action for any party to any contract allegedly formed in violation of any ICA provision, rule, regulation, or order to sue for rescission of that contract. That we cannot do.  In *Northstar* we held that the structure

---

[3] To the extent statements suggesting to the contrary in *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780 (7th Cir. 1977), and *Lessler v. Little*, 857 F.2d 866 (1st Cir. 1988), can be read as anything more than dicta, we are skeptical that those cases remain good law after the Supreme Court's decision in *Sandoval*.  We also agree with the Third Circuit that the Supreme Court's decision about a different statute in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979), does not control our decision about the ICA.  *See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 677 F.3d 178, 186-87 (3d Cir. 2012).

of the ICA forecloses reading the statute as implying a private of action "to enforce the individual provisions of the Act."   615 F.3d at 1116; *see also Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116–17 (2d Cir. 2007); *Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 433 (2d Cir. 2002). And although we did not specifically address section 47(b) in *Northstar*, our reading of the ICA there demands that we reject UFCW's reading of the ICA here.

The ICA empowers "the SEC to enforce all of the provisions of the [statute] by granting the [SEC] broad authority to investigate suspected violations; initiate actions in federal court for injunctive relief or civil penalties; and create exemptions from compliance with any ICA provision." *Northstar*, 615 F.3d at 1116; *see also* 15 U.S.C. §§ 80a-6(c), 80a-41.   Congress, for that matter, has demonstrated in this very statute that it "knew how to create a private right of action to enforce a particular section of the [ICA] when it wished to do so." *Northstar*, 615 F.3d at 1117. The ICA expressly authorizes "private suits for damages against insiders of closed-end investment companies who make short-swing profits" and derivative suits against "an investment company's advisor and its affiliates for breach of certain fiduciary duties."   *Id.*; *see also* 15 U.S.C. §§ 80a-29(h), 80a-35(b).   This detailed statutory scheme, we explained, indicated that Congress never intended further private enforcement of the ICA.  *See Northstar*, 615 F.3d at 1117.

Our reasoning made good sense in *Northstar*, and it makes even better sense here.  Consider the circumstances of this case.  UFCW sued while Yahoo! was negotiating a multi-billion-dollar sale of its internet business, and UFCW sought (among other things) an injunction preventing any such sale.  UFCW thus asserts the ability to halt a deal the

SEC has not blocked for alleged violations of an ICA exemption the SEC has not addressed, even though the SEC has been made fully aware of the facts underlying those alleged violations.

And that is not even the most awesome power UFCW purports to possess. So far as we can tell, nothing in UFCW's reading of section 47(b) would stop UFCW from seeking to rescind not just a handful of employment contracts, but also every other contract Yahoo! has entered into for the better part of a decade. If Congress really intended to expose companies receiving an ICA exemption to lawsuits of this unparalleled magnitude, it would have expressed that intention clearly, not covertly. Congress, after all, tends not to "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

Furthermore, at least when it comes to ICA exemptions, UFCW's position threatens to force courts and the SEC into a tellingly odd game of chicken. For example, if a court concluded in the first instance that a company had violated its ICA exemption, and if circumstances had not changed since the court's decision, could the SEC re-exempt the company as it saw fit? Or would the SEC, the body the ICA expressly charges with considering changed circumstances in the first instance, be bound by the court's decision until circumstances changed again? Either the court's diligent efforts get wasted, or the SEC's express prerogatives get thwarted. Pick your poison. Or better yet, barring a clear congressional command to the contrary, decline the "invitation to have one last drink." *Sandoval*, 532 U.S. at 287. We choose temperance.

Because UFCW's claims all hinge on the power to challenge the continued validity of Yahoo!'s ICA

exemption, and because the ICA accords UFCW no such power, we affirm.

**AFFIRMED.**