**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SALOOJAS, INC.,

*Plaintiff-Appellant*,

v.

AETNA HEALTH OF
CALIFORNIA, INC.,

*Defendant-Appellee*.

Nos.
22-16034, 22-16035,
22-16036, 22-16037,
22-16038

D.C. Nos.
3:22-cv-01696-JSC
3:22-cv-01702-JSC
3:22-cv-01703-JSC
3:22-cv-01704-JSC
3:22-cv-01706-JSC

OPINION

Appeal from the United States District Court
for the Northern District of California
Jacqueline Scott Corley, Magistrate Judge, Presiding

Argued and Submitted February 14, 2023
San Francisco, California

Filed September 7, 2023

Before: Kim McLane Wardlaw, Jacqueline H. Nguyen,
and Lucy H. Koh, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Coronavirus Aid, Relief, and Economic Security Act

The panel affirmed the district court's dismissal of five actions filed by Saloojas, Inc., against Aetna Health of California, Inc., seeking under the Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) to recover the difference in cost between Saloojas's posted cash price for COVID-19 testing and the amount of reimbursement it received from Aetna.

Saloojas argued that § 3202 of the CARES Act required Aetna to reimburse out-of-network providers like itself for the cash price of diagnostic tests listed on the providers' websites.

Agreeing with the district court, the panel held that the CARES Act does not provide a private right of action to enforce violations of § 3202. Saloojas correctly conceded that the CARES Act did not create an express private right of action. The panel held that there is not an implied private right of action for providers to sue insurers. The use of mandatory language requiring reimbursement at the cash price does not demonstrate Congress's intent to create such a right. The statute does not use "rights-creating language" that places "an unmistakable focus" on the individuals protected as opposed to the party regulated.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Michael L. Gabriel (argued), Law Office of Michael Lynn Gabriel, Redwood City, California, for Plaintiff-Appellant.

Emily S. Costin (argued), Alston & Bird LLP, Washington, D.C.; David B. Carpenter, Alston & Bird LLP, Atlanta, Georgia; for Defendant-Appellee.

Charles C. Gokey, Engstrom Lee, Minneapolis, Minnesota; Jeffrey S. Gleason, Robins Kaplan LLP, Minneapolis, Minnesota; for Amicus Curiae Premera Blue Cross.

## OPINION

NGUYEN, Circuit Judge:

Saloojas, Inc. ("Saloojas") filed five actions against Aetna Health of California, Inc. ("Aetna"), seeking to recover the difference in cost between its posted cash price for COVID-19 testing and the amount of reimbursement it received from Aetna. Saloojas argues that § 3202 of the CARES Act requires Aetna to reimburse out-of-network providers like Saloojas for the cash price of diagnostic tests listed on their websites. The district court dismissed this action on the ground that the CARES Act does not provide a private right of action to enforce violations of § 3202. We agree and therefore affirm the dismissal.

## I.

On March 18, 2020, in response to the outbreak of the COVID-19 pandemic in the United States, Congress enacted the Families First Coronavirus Response Act ("FFCRA").

Pub. L. No. 116-127, 134 Stat. 178. Section 6001 of FFCRA, titled "Coverage of Testing for COVID-19," requires health insurers to cover, at no additional expense to insureds, diagnostic products for detection of COVID-19. *Id.* § 6001(a). It contains an enforcement provision: the statute "shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury" to insurers "as if included in" certain provisions of the Public Health Service Act, the Employee Retirement Income Security Act of 1974, and the Internal Revenue Code of 1986. *Id.* § 6001(b).

Soon after, on March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act). CARES Act, Pub. L. No. 116-136, 134 Stat. 281, 367. Section 3202 of the CARES Act, titled "Pricing of Diagnostic Testing," states that insurers providing coverage of COVID-19 diagnostic products as described in § 6001(a) of FFCRA "shall reimburse the provider of the diagnostic testing" at either a negotiated rate or "in an amount that equals the cash price for such service as listed by the provider on a public internet website." *Id.* § 3202(a). The provision mandates that "each provider of a diagnostic test" publish its cash price on a public website. *Id.* § 3202(b)(1). Finally, the statute provides that the "Secretary of Health and Human Services may impose a civil monetary penalty on any provider of a diagnostic test for COVID-19 that" does not comply with posting a cash price. *Id.* § 3202(b)(2).

## II.

Saloojas is a provider of COVID-19 diagnostic testing. Saloojas is outside of Aetna's provider network and therefore does not have a negotiated rate for COVID-19

tests.  Saloojas alleges that Aetna paid less than Saloojas's posted cash price for COVID-19 tests provided to Aetna's insureds between November 20 and 23, 2020.  Saloojas filed five actions against Aetna in Alameda County Superior Court.  In each case, Saloojas alleged identical claims under § 3202(a)(2) of the CARES Act, seeking reimbursement for the cost of COVID-19 testing and services provided to patients insured by Aetna.  Saloojas sought the difference between what Aetna already paid and Saloojas's entire bill, as well as "punitive damages . . . for the intentional violation of the Federal CARES Act."

Aetna removed the cases to federal court and moved to dismiss for failure to state a claim on the ground that the CARES Act does not provide a private right of action to Saloojas.  On June 23, 2022, the district court determined that the CARES Act does not contain any private right of action for providers to bring claims against insurers for violations of § 3202, and granted the motions to dismiss. The district court gave Saloojas leave to amend its complaints, but Saloojas instead filed notices of appeal.  The district court then entered orders of dismissal and judgment in favor of Aetna.  The parties jointly moved to consolidate the appeals, which this court granted on September 12, 2022.

## III.

We review dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo and may affirm on any ground supported by the record.  *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 554 (9th Cir. 2016).  We review questions of statutory interpretation de novo.  *Id.*  "Dismissal is appropriate when the complaint lacks a 'cognizable legal theory' or sufficient factual allegations to 'support a cognizable legal theory.'"

*Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652 (9th Cir. 2019)).

## IV.

Saloojas concedes that the CARES Act did not create an express private right of action for a provider to seek reimbursement for COVID-19 testing at the provider's publicly posted cash price, but argues that there is an implied private right of action.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). We must "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative." *Id.* (citation omitted).

The Supreme Court initially identified four factors for courts to examine in determining whether Congress intended to imply a private right of action:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States,

> so that it would be inappropriate to infer a
> cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78 (1975) (internal citations and
quotations omitted).   "In later cases, the Supreme Court
essentially collapsed the *Cort* test into a single focus: '[t]he
central inquiry remains whether Congress intended to create,
either expressly or by implication, a private cause of
action.'" *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163,
1170 (9th Cir. 2013) (quoting *Touche Ross & Co. v.
Redington*, 442 U.S. 560, 575 (1979)); *see also Lil' Man in
the Boat, Inc. v. City & Cnty. of San Francisco* ("*Lil' Man*"),
5 F.4th 952, 958 (9th Cir. 2021) ("Since announcing this test,
'the Supreme Court has elevated intent into a supreme
factor,' and *Cort*'s other three factors are used to decipher
congressional intent." (quoting *Logan*, 722 F.3d at 1171)).

"Because the Supreme Court has elevated intent into a
supreme factor, we start there and . . . . presume that
Congress expressed its intent through the statutory language
it chose." *Logan*, 722 F.3d at 1171.  Saloojas argues that the
statute shows Congress's intent to create an implied private
right of action because it uses mandatory language requiring
reimbursement at the cash price.[1] According to Saloojas, the

---

[1] Saloojas's argument is based on the following statutory text of the
CARES Act:

> (a) REIMBURSEMENT RATES.—A group health
> plan or a health insurance issuer providing coverage of
> items and services described in section 6001(a) of
> division F of the Families First Coronavirus Response
> Act (Public Law 116-127) with respect to an enrollee

use of such mandatory language "grant[s] private rights to the members of an[] identifiable class." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979). However, Congress's use of mandatory language alone is not enough to create an implied private right of action. Rather, a statute must use "rights-creating language" that places "an *unmistakable focus*" on the individuals protected instead of the person regulated. *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018) (internal quotations and citation omitted).

For example, we held that statutory language in the Protecting Tenants at Foreclosure Act that "any immediate successor in interest . . . shall assume such interest subject to" certain rights of "bona fide tenant[s]" did not provide a private right of action to the bona fide tenants. *Logan*, 722 F.3d at 1171. The bona fide tenants had no implied private right of action because the statutory language was framed in terms of imposing obligations on the "successor in interest," while the "bona fide tenant[s]" were "referenced only as an object" of the obligation. *Id.* Similarly, we held that statutory language in the Rivers and Harbors Act prohibiting non-federal entities from imposing fees or other charges on

---

> **shall reimburse the provider** of the diagnostic testing as follows:
>
>    . . .
>
> (2) If the health plan or issuer does not have a negotiated rate with such provider, such plan or issuer **shall reimburse the provider** in an amount that equals the cash price for such service as listed by the provider on a public internet website, or such plan or issuer may negotiate a rate with such provider for less than such cash price.

CARES Act § 3202(a)(2) (emphasis added).

vessels, which only referred to vessels as an object of the obligation not to impose fees, did not provide a private right of action to the vessels. *Lil' Man*, 5 F.4th at 960 (quoting 33 U.S.C. § 5(b) ("No . . . fees . . . shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest . . . .")).

Here, Saloojas bases its claim on § 3202(a)(2)'s directive that an insurer "shall reimburse" the provider at "the cash price" of testing if the insurer "does not have a negotiated rate" with the provider. Like in *Logan* and *Lil' Man*, the focus of the provision is on the regulated party—the "group health plan or . . . health insurance issuer"—and the diagnostic test "provider" is only the object of the obligation. Accordingly, § 3202(a)(2) of the CARES Act does not contain rights-creating language that would evince Congress's intent to create a private right of action for providers to sue insurers.

Saloojas relies heavily on a single district court's decision from the Southern District of Texas which initially relied on § 3202(a)'s mandatory reimbursement language to find an implied private right of action under the CARES Act, *Diagnostic Affiliates of Northeast Hou, LLC v. United Healthcare Services, Inc.*, No. 2:21-CV-00131, 2022 WL 214101 (S.D. Tex. Jan. 18, 2022); however, that court ultimately reversed course. *Diagnostic Affiliates of Ne. Hou, LLC v. Aetna, Inc.*, No. 2:22-CV-00127, 2023 WL 1772197 (S.D. Tex. Feb. 1, 2023). Although no circuit court has addressed this question, we note that every district court that

has ruled on this issue has concluded that there is no private right of action under § 3202 of the CARES Act.[2]  We agree.

Our conclusion is reinforced by other provisions of the CARES Act and FFRCA that lay out enforcement mechanisms.  *See Logan*, 722 F.3d at 1172 ("Where a statutory scheme contains a particular express remedy or remedies, 'a court must be chary of reading others into it.'" (quoting *TAMA*, 444 U.S. at 19)).  Section 3202(b) of the CARES Act authorizes the Secretary of Health and Human Services to impose a monetary penalty on any provider that fails to publicly post its cash price.  That Congress chose to include an enforcement mechanism in the CARES Act that is limited to actions by the Secretary against a provider of testing services cuts strongly against a finding of intent to create a private remedy for those providers.  *See Sandoval*, 532 U.S. at 289 ("Nor do the methods that § 602 goes on to provide for enforcing its authorized regulations manifest an intent to create a private remedy; if anything, they suggest the opposite.").  Moreover, the CARES Act was passed soon after FFCRA and expands on the requirements in § 6001(a) of FFCRA.  Section 6001 of FFCRA contains enforcement and implementation provisions for the Secretary of various agencies—Health and Human Services, Labor, and the Treasury.  FFCRA § 6001(b), (c).  Again, the fact that these provisions provide an enforcement mechanism but only through the Secretaries suggests a lack of congressional

---

[2] *See, e.g.*, *Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20-CV-1675, 2022 WL 743088 (D. Conn. Mar. 11, 2022); *GS Labs, Inc. v. Medica Ins. Co.*, No. 21-CV-2400, 2022 WL 4357542 (D. Minn. Sept. 20, 2022); *BCBSM, Inc. v. GS Labs, LLC*, No. 0:22-CV-00513, 2023 WL 2044329, at *2–4 (D. Minn. Jan. 30, 2023); *Carr v. Kabbage, Inc.*, No. 1:22-CV-01249, 2023 WL 3150084, at *4 (N.D. Ga. Mar. 31, 2023) (collecting cases).

intent to create a private right of action for providers.  *See Sandoval*, 532 U.S. at 289.  Saloojas correctly points out that nothing in the language of the statute shows an intent to deny a remedy, but that statutory silence is not enough.  As we explained in *Lil' Man*, "[a] statute must also display an intent to create a private remedy in order to create an implied right of action."  5 F.4th at 959.  We therefore hold that the CARES Act does not grant a private right of action to a provider of COVID-19 diagnostic testing to enforce § 3202.

## V.

"Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87.  Because the district court properly dismissed Saloojas's claims, we affirm.

**AFFIRMED.**