# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10760

KELLIE STOKES, Mom and Friend of B.S.,

     Plaintiff - Appellant

v.

SOUTHWEST AIRLINES,

     Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

April 5, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before KING, HAYNES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

We must decide whether private persons can sue in federal district court to enforce the Air Carrier Access Act of 1986 ("ACAA"), Pub. L. No. 99-435, 100 Stat. 1080 (codified as amended at 49 U.S.C. § 41705). Although we answered that question affirmatively in *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991), the Supreme Court's intervening decision in *Alexander v. Sandoval*, 532 U.S. 275, 286–91 (2001), now mandates a different result. We therefore join every post-*Sandoval* federal court to consider the issue and hold that the ACAA confers no such private right of action.

No. 17-10760

I

Kellie Stokes sues Southwest Airlines on behalf of her young son with autism. She alleges that Southwest gate agents prevented her family from boarding their flight, allegedly because the agents considered her son's behavior disruptive. A Southwest pilot had also allegedly been rude to them the previous day. According to Stokes, her son suffered "great physical emotional and mental pain and anguish" as a result of these experiences.

Stokes originally asserted claims under state law and under the Americans with Disabilities Act ("ADA"). In response to Southwest's motion to dismiss, however, Stokes withdrew the ADA claim and substituted a new claim under a different disability-discrimination statute: the ACAA. *See* 49 U.S.C. § 41705(a). Southwest again moved to dismiss, arguing that the state-law claims were preempted and that only the federal government may sue to enforce the ACAA in district court. The district court initially granted the motion to dismiss only in part. But on Southwest's motion to reconsider, the district court held that the ACAA confers no right of action to private litigants; declined to exercise supplemental jurisdiction over the remaining state-law claims, *see* 28 U.S.C. 1367(c)(3); and accordingly dismissed the case.

On appeal, Stokes challenges only the district court's conclusion that the ACAA supplies no private right of action. "We review this issue of law *de novo*." *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 520 (5th Cir. 2002).

II

A

Whether a given statute should be enforceable through private civil lawsuits is, like any aspect of statutory design, fundamentally up to Congress. *E.g.*, *Sandoval*, 532 U.S. at 286; *Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017); *Delancey v. City of Austin*, 570 F.3d 590, 592–

No. 17-10760

93 (5th Cir. 2009). Often, Congress expressly provides for private civil-suit enforcement. Other times, however, Congress specifies only criminal-law enforcement, or leaves civil enforcement in the hands of administrative agencies. Courts are bound to follow Congress's choices in this arena, and bound to ascertain those choices through the tools of statutory interpretation. *Sandoval*, 532 U.S. at 286–87. "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017).

This was not always the case. During the mid-twentieth century, the Supreme Court viewed the fashioning of statutory remedies as within the proper judicial role. *Id.* at 1855. Under the now-abandoned maxim that "a statutory right implies the existence of all necessary and appropriate remedies," *id.* (quoting *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239 (1969)), this "*ancien regime*" routinely inferred private rights of action from silent statutory text, *id.* The Supreme Court's approach has since evolved. Starting in *Cort v. Ash*, 422 U.S. 66 (1975), affirmative congressional intent became one of four relevant factors (though not always a necessary one), *see id.* at 78, 82, and the next two decades of cases increasingly focused on congressional intent alone, *see, e.g.*, *Love v. Delta Air Lines*, 310 F.3d 1347, 1351–52 & n.2 (11th Cir. 2002) (collecting cases). *See generally* Richard H. Fallon, Jr., *et al.*, *The Federal Courts and the Federal System* 705–07 (6th ed. 2009).

That trend culminated in *Alexander v. Sandoval*, 532 U.S. 275, 286–93 (2001), which today defines the method for identifying private rights of action. *Sandoval*'s command is clear: "[t]he judicial task is to interpret *the statute Congress has passed*," *id.* at 286 (emphasis added), and to do so by consulting statutory structure and text, *id.* at 288 & n.7. "Legal context," such as prevailing law at the time of the statute's enactment, matters "only to the extent it clari-

No. 17-10760

fies text." *Id.* at 288. And absent "affirmative" evidence of intent to allow private civil suits, there can be no private right of action—"no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87, 293 n.8.

B

Since *Sandoval*, every federal court to reach the issue has held that the ACAA's text and structure preclude a private right of action. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 597–98 (2d Cir. 2011); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1269–70 (10th Cir. 2004); *Love*, 310 F.3d at 1354–59.[1] We agree that *Sandoval* compels this result.

---

[1] Representative district court opinions include *Segalman v. Sw. Airlines Co.*, No. 2:11-cv-01800, 2016 WL 146196, at *3 (E.D. Cal. Jan. 13, 2016); *O'Brien v. City of Phoenix*, No. 12-cv-1334, 2012 WL 4762465, at *1 (D. Ariz. Oct. 5, 2012); *Gill v. JetBlue Airways Corp.*, 836 F. Supp. 2d 33, 47–48 (D. Mass. 2011); *Brown v. Alaska Air Grp., Inc.*, No. 11-cv-0091, 2011 WL 2746251, at *2 (E.D. Wash. July 14, 2011); *Hill v. United Air Lines, Inc.*, No. 2:10-cv-3243, 2011 WL 1113499, at *1–2 (D.S.C. Mar. 24, 2011); *Seymour v. Cont'l Airlines, Inc.*, No. 09-526, 2010 WL 3894023, at *1–2 (D.R.I. Oct. 4, 2010); *Johnson v. Nw. Airlines, Inc.*, No. 08-cv-2272, 2010 WL 5564629, at *5 (N.D. Cal. May 5, 2010); *Jackson v. United Airlines, Inc.*, No. 3:08-cv-182, 2009 WL 1036068, at *10 (E.D. Va. Apr. 17, 2009); *Thomas v. Nw. Airlines Corp.*, No. 08-11580, 2008 WL 4104505, at *2–5 (E.D. Mich. Sept. 2, 2008); *Wright ex rel. D.W. v. Am. Airlines, Inc.*, 249 F.R.D. 572, 575 (E.D. Mo. 2008); *Shqeirat v. U.S. Airways Grp., Inc.*, 515 F. Supp. 2d 984, 1000–02 (D. Minn. 2007); *Chipps v. Cont'l Airlines, Inc.*, No. 3:05-cv-2024, 2006 WL 463160, at *3–5 (M.D. Pa. Feb. 24, 2006); *Bynum v. Am. Airlines*, No. 03-cv-518, 2004 WL 5568868, at *2 (S.D. Tex. Sept. 1, 2004); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 402–03 (S.D.N.Y. 2004); and *Fox v. Am. Airlines, Inc.*, No. 02-cv-2069, 2003 WL 21854800, at *4 (D.D.C. Aug. 5, 2003), *aff'd on other grounds*, 389 F.3d 1291 (D.C. Cir. 2004). *But see Waters v. Port Auth. of N.Y. & N.J.*, 158 F. Supp. 2d 415, 432–33 (D.N.J. 2001) (rendering a decision immediately after *Sandoval*, but without acknowledging *Sandoval* or otherwise addressing the ACAA's text and structure); *Bower v. Fed. Exp. Corp.*, 156 F. Supp. 2d 678, 688 n.17 (W.D. Tenn. 2001) (same). We also note that the agency charged with administering the ACAA has taken the position that no private right of action exists. *See* Brief of U.S. Dep't of Transp. as Amicus Curiae at 9–14, *Boswell v. Skywest Airlines, Inc.*, No. 02-4188 (10th Cir. Dec. 3, 2003) [hereinafter DOT Amicus Brief], *available at* http://bit.ly/2pbWlT4.

The Third and Ninth Circuits have reserved on whether *Sandoval* permits an ACAA private right of action, *see Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1002 (9th Cir. 2013); *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 132 n.18 (3d Cir. 2010), but the Ninth Circuit is set to decide the issue soon, *see Segalman v. Sw. Airlines Co.*, No. 17-15196 (9th Cir. argued Mar. 14, 2018).

4

No. 17-10760

As other circuits have explained, although the ACAA prohibits airlines from discriminating on the basis of disability, it "does not expressly provide a right to sue the air carrier." *Lopez*, 662 F.3d at 597 (construing 49 U.S.C. § 41705). To the contrary, the ACAA combines with other federal aviation statutes to form a comprehensive *administrative* scheme "designed to vindicate fully the rights of disabled persons." *Id. See generally* 49 U.S.C. subtit. VII, pt. A (§§ 40101–46507). Those statutes likewise instruct that ACAA enforcement lies primarily with the Department of Transportation ("DOT"), leaving private litigants only carefully circumscribed roles. To wit:

- Rather than suing airlines directly, aggrieved passengers are to notify the DOT, 49 U.S.C. § 46101(a), which "shall investigate each [ACAA] complaint," *id.* § 41705(c)(1).[2]

- If, after an investigation and hearing, the DOT finds an ACAA violation, it *must* issue an order compelling compliance, *id.* § 46101(a)(4), and may further revoke the airline's air carrier certificate, *id.* § 41110(a)(2)(B), or impose civil penalties of up to $25,000 for each act of discrimination, *id.* §§ 41705(b), 46301(a)(1)(A) & (c)(1)(A).

- The DOT may then enforce these orders by filing *its own* civil action in district court, *id.* § 46106, or by requesting that the Department of Justice do the same, *id.* § 46107(b)(1)(A).

- The DOT must also "publish disability-related complaint data" and "report annually to Congress" on "all complaints received." *Id.* § 41705(c)(2)–(3).

- Finally, persons with a "substantial interest" in a DOT enforcement order may seek judicial review by petitioning a federal *court of appeals*, *see id.*

---

[2] In addition, under DOT regulations, domestic airlines using planes with 19 or more passenger seats must retain one or more "Complaints Resolution Officials" at each airport they serve, who must take steps to resolve ACAA complaints. *See* 14 C.F.R. §§ 382.151, 382.153. The airline itself must also respond to written complaints and inform complainants of their right to invoke the DOT administrative process. *See id.* § 382.155.

No. 17-10760

§ 46110, arguably allowing aggrieved passengers to compel DOT investigations, *see Love*, 310 F.3d at 1356 n.11.

"Notably absent from th[is] scheme," however, "is a private right to sue in a federal district court." *Id.* at 1354; *accord Boswell*, 361 F.3d at 1265 ("[The] ACAA establishes certain administrative remedies but not a private right of action.").

This detailed statutory structure evinces none of the requisite "affirmative" intent. *See Sandoval*, 532 U.S. at 289–91, 293 n.8. Quite the opposite: "Congress's creation of specific means of enforcing the statute indicates that it did *not* intend to allow an additional remedy—a private right of action—that it did not expressly mention at all." *Boswell*, 361 F.3d 1270 (emphasis added); *see also Sandoval*, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *Lopez*, 662 F.3d 598 ("[T]he text and structure of the [ACAA] show that Congress chose to accomplish [its] goal through means other than private enforcement actions in the district courts."); *Love*, 310 F.3d at 1354 ("[T]he text of the ACAA . . . and the surrounding statutory structure . . . belie[] any congressional intent to create a private remedy."); *cf. Casas*, 304 F.3d at 522–23 (holding that this same administrative scheme precludes a private right to enforce a similar aviation statute). The ACAA confers no private right to sue in federal district court.

## C

The difficulty, of course, is that our circuit previously has held otherwise. *See Shinault v. Am. Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991). Our analysis would usually stop there. "This circuit abides by the rule of orderliness, under which a panel of the court cannot overturn a prior panel decision 'absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court or by our *en banc* court.'" *United States v. Boche-Perez*, 755

6

F.3d 327, 334 (5th Cir. 2014) (quoting *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012)).

But when the Supreme Court "'expressly or implicitly' overrules one of our precedents, we have the authority *and obligation* to declare and implement this change in the law." *United States v. Tanksley*, 848 F.3d 347, 350 (5th Cir.) (emphasis added) (quoting *United States v. Kirk*, 528 F.2d 1057, 1063 (5th Cir. 1976)), *as supplemented*, 854 F.3d 284 (5th Cir. 2017). Such a change occurs, for example, when the Supreme Court disavows the mode of analysis on which our precedent relied. *See, e.g., id.* at 350–52 (finding precedent abrogated where a recent Supreme Court opinion "instructed courts on how to" perform the relevant analysis in a way that "unequivocally resolve[d]" the case); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775–76 (5th Cir. 2003) (finding precedent abrogated where an intervening Supreme Court case "shift[ed] [the] focus" of the applicable test). "[A] mere 'hint' of how the [Supreme] Court might rule in the future," however, will not suffice; the intervening change "must be unequivocal." *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013).

To say that *Sandoval* "unequivocally" abrogated *Shinault* is, if anything, an understatement. In *Shinault*, our court inferred a private right of action from the ACAA notwithstanding that "[t]he [the statute] does not provide for [one]." 936 F.2d at 800. Instead, we justified our holding by citing legislative history, historical congressional practice, and the fact that the ACAA's language does not expressly *prohibit* courts from creating a private right. *See id.* Then, acknowledging the dearth of guidance from Congress and relying on cases from the "*ancien regime*," we determined what remedies were "necessary and appropriate," ultimately settling on compensatory and emotional damages but not injunctions. *Id.* at 804 (quoting *Little Hunting Park*, 396 U.S. at 239, *abrogation recognized in Ziglar*, 137 S. Ct. at 1855). *Sandoval* could hardly be clearer that courts cannot take this approach. *See, e.g.*, 532 U.S. at 286–87

("Statutory intent [to create a private remedy] is determinative. Without it, a cause of action does not exist and courts may not create one, no matter . . . how compatible with the statute [it might be]. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." (citations omitted)); *id.* at 288 ("In determining whether statutes create private rights of action, . . . legal context matters only to the extent it clarifies text."); *id.* at 293 n.8 ("'[A]ffirmative' evidence of congressional intent must be provided *for* an implied remedy, not against it . . . ."). We cannot adhere to *Shinault* without disregarding *Sandoval*.[3]

Other circuits agree that *Sandoval* contradicts *Shinault*. *See, e.g.*, *Lopez*, 662 F.3d at 597; *Boswell*, 361 F.3d at 1269 (declining to follow *Shinault* because it "issued before the Supreme Court's shift" in *Sandoval*); *Love*, 310 F.3d at 1358–59 (declining to follow *Shinault* because "[after] *Sandoval*, we may not engage in a similarly wide-ranging interpretive inquiry"); *see also* DOT Amicus Brief, *supra* note 1, at 9 n.4 ("[*Shinault*] applied an analysis that the Supreme Court has since rejected."). And just last year, when a district court rejected an argument based on *Shinault* because *Shinault* "relie[d] on pre-*Sandoval* reasoning," *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 616 (N.D. Tex. 2016) (addressing 49 U.S.C. § 41310), our response was to summarily affirm, "[e]ssentially for the reasons stated in the district court's comprehensive and well-reasoned opinion," 682 F. App'x 310, 311 (5th Cir. 2017). There is no serious dispute that *Shinault* no longer states the law.[4]

---

[3] Congress also amended the ACAA after we decided *Shinault*. *See Love*, 310 F.3d at 1350 n.1. But the DOT has represented that these changes were "non-substantive," DOT Amicus Brief, *supra* note 1, at 4, and Southwest does not advance them as a reason not to follow *Shinault*. Given that *Sandoval* clearly "changed the legal landscape," *e.g.*, *Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 86 n.4 (1st Cir. 2004), we need not similarly address the effect of the statutory amendments on our rule of orderliness.

[4] Like our circuit, the Eighth Circuit held a decade before *Sandoval* that the ACAA is privately enforceable. *See Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 569–70 (8th

No. 17-10760

In response, Stokes contends that our caselaw has reaffirmed *Shinault* even after *Sandoval* issued. If that were true, that would control: the determination whether a given precedent has been abrogated is itself a determination subject to the rule of orderliness. *See United States v. Reyes-Contreras*, 882 F.3d 113, 123 (5th Cir. 2018). But the case on which Stokes relies—*Bynum v. American Airlines, Inc.*, 166 F. App'x 730 (5th Cir. 2006)—held no such thing: it held, without reference to or discussion of *Sandoval*, that attempting to sue under the ACAA was not *sanctionably frivolous* with *Shinault* on the books. *See id.* at 733 (applying Fed. R. Civ. P. 11(b)(2)). And in any event, *Bynum* is an unpublished decision that does not bind us here. *See* 5th Cir. R. 47.5.4. *Sandoval*, by contrast, is a command we cannot ignore.

III

In light of "the unambiguous teachings of *Sandoval,*" *Love*, 310 F.3d at 1358, we join the Second, Tenth, and Eleventh Circuits and hold that, with the limited exceptions described above, the ACAA "is enforceable only by the agency charged with administering it," *Horne v. Flores*, 557 U.S. 433, 456 n.6 (2009). No private right of action exists to enforce the ACAA in district court. *Shinault*'s contrary holding did not survive *Sandoval*. The district court's judgment is AFFIRMED.

---

Cir. 1989). The Eight Circuit has yet to revisit that holding, but district courts in that circuit have already declined to follow it in light of *Sandoval*. *See, e.g.*, *Wright*, 249 F.R.D. at 575; *Shqeirat*, 515 F. Supp. 2d at 1000–02.