**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT SEGALMAN,
*Plaintiff-Appellant*,

v.

SOUTHWEST AIRLINES COMPANY,
*Defendant-Appellee.*

No. 17-15196

D.C. No.
2:11-cv-01800-
MCE-DB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted March 14, 2018
San Francisco, California

Filed July 23, 2018

Before: Richard A. Paez and Sandra S. Ikuta, Circuit
Judges, and Eric N. Vitaliano,* District Judge.

Opinion by Judge Paez

---

\* The Honorable Eric N. Vitaliano, United States District Judge for
the Eastern District of New York, sitting by designation.

## SUMMARY[**]

**Air Carrier Access Act**

The panel affirmed the district court's dismissal of a claim under the Air Carrier Access Act of 1986, which prohibits air carriers from discriminating against individuals on the basis of a physical or mental impairment.

Joining other circuits, the panel held that the ACAA's anti-discrimination prohibition is not enforceable through an implied private cause of action.

## COUNSEL

David C. Wakefield (argued), Law Offices of David C. Wakefield, San Diego, California, for Plaintiff-Appellant.

Rebekka R. Martorano (argued) and Timothy J. Ryan, The Ryan Law Group, Sacramento, California, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

PAEZ, Circuit Judge:

The Air Carrier Access Act of 1986 ("ACAA"), 49 U.S.C. § 41705, prohibits air carriers from discriminating against individuals on the basis of a physical or mental impairment. We must decide whether this prohibition is enforceable through an implied private cause of action. We hold that it is not.

## I.[1]

Robert Segalman has cerebral palsy and uses a motorized wheelchair. In 2009 and 2010, Segalman's wheelchair was repeatedly damaged while in the possession of Southwest Airlines Co. ("Southwest"). On one occasion, Southwest returned Segalman's wheelchair to him without a seatbelt, which had been attached when Segalman left the wheelchair in Southwest's care at the airport departure gate. Before Segalman could get an appointment to replace the seatbelt, he fell out of his wheelchair and broke his shin in two places, resulting in a four-day hospital stay. On another occasion, Southwest returned the wheelchair to Segalman with a broken armrest. On a third occasion, Southwest returned the wheelchair with damage to the joystick that rendered the wheelchair inoperative.

In July 2011, Segalman brought this action against Southwest and ten unidentified Southwest employees for

---

[1] Because the district court dismissed Segalman's ACAA claim pursuant to Federal Rule of Civil Procedure 12(b)(6), we take the facts alleged in the complaint as true and construe them in the light most favorable to Segalman. *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 998 n.1 (9th Cir. 2013).

damages and injunctive relief.  He alleged negligence under California state law and a violation of the ACAA, which prohibits air carriers from "discriminat[ing] against an otherwise qualified individual" on the ground that the individual "has a physical or mental impairment that substantially limits one or more major life activities." 49 U.S.C. § 41705(a).[2] Segalman subsequently amended his complaint twice, withdrawing his ACAA claim and adding claims alleging California statutory violations.  The district court dismissed Segalman's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), and we affirmed in part and reversed in part. *Segalman v. Southwest Airlines Co.*, 603 F. App'x 595, 597 (9th Cir. 2015).

On remand, Segalman amended his complaint a third time, reinstating his initial ACAA claim and realleging California statutory violations and negligence.  Southwest moved to dismiss Segalman's Third Amended Complaint except as to his negligence claim, and the district court granted the motion.  With respect to the ACAA claim, the

---

[2] The ACAA was enacted in 1986 as section 404(c) of the Federal Aviation Act of 1958 ("FAA"), *see* Pub. L. No. 99-435, § 2(a), 100 Stat. 1080 (1986) (codified at 49 U.S.C. § 1374(c)), and recodified in 1994, with immaterial changes, at 49 U.S.C. § 41705, *see* Pub. L. No. 103-272, § 1(e), 108 Stat. 745, 1141 (1994).  Although Congress amended the ACAA two more times, in 2000 and 2003, the prohibition against disability discrimination has not changed since 1994.  In 2000, Congress added subsections (b) and (c) to the ACAA to clarify that a "separate violation occurs under [the statute] for each individual act of discrimination prohibited" and to require the Secretary of Transportation to "investigate each complaint of a violation," among other changes. *See* Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (the "FAIR Act"), Pub. L. No. 106-181, Title VII, § 707, 114 Stat. 61, 158 (2000).  Congress most recently amended the ACAA in 2003 to make minor technical changes. *See* Pub. L. No. 108-176, Title V, § 503(d)(1), 117 Stat. 2490, 2559 (2003).

district court concluded that no implied private cause of action existed, and that even if it did, Segalman failed to allege that he exhausted his administrative remedies. In December 2016, pursuant to the parties' stipulation, the district court dismissed Segalman's remaining negligence claim with prejudice. The district court subsequently entered final judgment, and Segalman timely appealed the dismissal of his ACAA claim.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's dismissal under Rule 12(b)(6), *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014), including the question whether a statute provides an implied private cause of action, *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010).

## III.

Applying *Alexander v. Sandoval*, 532 U.S. 275 (2001), we hold that the ACAA does not create an implied private cause of action.[3] First, for context, we briefly review the shift in the Supreme Court's case law addressing implied cause of action claims, and the corresponding change in our sister circuits' decisions applying that case law to the ACAA. Second, we join the Second, Fifth, Tenth, and Eleventh Circuits in concluding that, in light of the ACAA's statutory structure, Congress did not intend to create a

---

[3] "Courts have used the terms 'private right of action' and 'private cause of action' interchangeably." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 n.3 (3d Cir. 2007) (citing cases). Throughout this opinion, we use "cause of action" except when quoting a case that uses "right of action."

private cause of action under the ACAA. Because we are not at liberty to recognize a private cause of action in the absence of such intent, we affirm the district court's dismissal of Segalman's ACAA claim.

## A.

As the Supreme Court's approach to claims alleging an implied cause of action shifted in recent decades, so too did the decisions of our sister circuits addressing claims of ACAA violations. When Congress enacted the ACAA in 1986, the prevailing framework for evaluating whether a statute implied a private cause of action was the four-factor test set out in *Cort v. Ash*, 422 U.S. 66 (1975). Under that framework, courts considered the following questions:

> [1] [I]s the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff?
>
> [2] [I]s there any indication of legislative intent, explicit or implicit, either to create . . . a [private] remedy or to deny one?
>
> [3] [I]s it consistent with the underlying purposes of the legislative scheme to imply . . . a [private] remedy for the plaintiff?
>
> [4] [I]s the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78 (citations and internal quotation marks omitted).

Within five years of the ACAA's enactment, the Fifth and Eighth Circuits held that, under *Cort*, the ACAA creates an implied private cause of action. *See Shinault v. American Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991), *overruled by Stokes v. Southwest Airlines*, 887 F.3d 199, 205 (5th Cir. 2018); *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 570 (8th Cir. 1989). In *Tallarico*, the Eighth Circuit concluded that all four *Cort* factors weighed in favor of recognizing an implied private cause of action. 881 F.2d at 569–70. With respect to the second factor, legislative intent to create a private remedy—the absence of which, as we explain *infra*, is now determinative—the Eighth Circuit relied on a senate report. *Id.* According to that report, Congress enacted the ACAA in response to the Supreme Court's decision in *United States Department of Transportation v. Paralyzed Veterans of America* (*PVA*), 477 U.S. 597 (1986), which held that section 504 of the Rehabilitation Act of 1973 applies only to those commercial airlines that receive direct federal subsidies, *id.* at 609. S. Rep. No. 99-400, at 1–2 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 2328, 2329. Based on the senate report and "the fact that the ACAA [wa]s patterned after the Rehabilitation Act of 1973, which Act ha[d] been held to imply a private cause of action," the Eighth Circuit concluded that "Congress implicitly intended that handicapped persons would have an implied private cause of action to remedy perceived violations of the ACAA." *Tallarico*, 881 F.2d at 570 (brackets and internal quotation marks omitted). Two years later, the Fifth Circuit agreed: "The legislative history of the ACAA indicates that Congress intended to provide a private cause of action under the ACAA and that cause of action would be consistent with

the statutory scheme." *Shinault*, 936 F.2d at 800 (citing *Tallarico*, 881 F.2d at 569–70).[4]

That was before the Supreme Court's decision in *Sandoval*. There, the Court "narrowed the framework for evaluating whether a statute implies a private cause of action." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1002 (9th Cir. 2013); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017). In particular, *Sandoval* explained that courts are tasked with determining only whether Congress intended to create a private cause of action. *See* 532 U.S. at 286–91. In addition, the Court clarified that the absence of the second *Cort* factor—i.e., an indication of legislative intent to create a private remedy—is dispositive:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Id.* at 286–87 (citations omitted).

---

[4] Relying on *Tallarico* and *Shinault*, we recognized an implied private cause of action under the ACAA in an unpublished decision. *See Adiutori v. Sky Harbor Int'l Airport*, 103 F.3d 137 (Table), 1996 WL 673805, at *3 (9th Cir. Nov. 20, 1996). We also addressed the merits of a claim brought under the ACAA, without squarely addressing the implied cause of action issue, in *Newman v. American Airlines, Inc.*, 176 F.3d 1128, 1132 (9th Cir. 1999).

Thus, in the wake of *Sandoval*, we evaluate whether an implied private cause of action exists under a statute by using ordinary tools of statutory interpretation, and we are not "constrained by the *Cort* framework." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013); *see also, e.g.*, *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1233 (9th Cir. 2008) ("Because the text and the structure of the Sarbanes-Oxley Act do not demonstrate an intent to create a private right of action under section 304, we need not delve into the first (federal right in plaintiff's favor), third (general statutory purpose), and fourth (nature of the action) *Cort* factors."). Under this approach, "[w]e begin our search for congressional intent with the language and structure of the statute, and then look to legislative history only if the language is unclear, or if there is a clearly expressed contrary intention in the legislative history that may overcome the strong presumption that the statutory language represents congressional intent." *Logan*, 722 F.3d at 1171 (citations omitted). Most relevant here, with respect to statutory structure, "[w]e . . . look to see whether Congress designated a method of enforcement other than through private lawsuits, because '[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Northstar Fin. Advisors*, 615 F.3d at 1115 (third alteration in original) (quoting *Sandoval*, 532 U.S. at 290); *see also, e.g.*, *UFCW Local 1500 Pension Fund v. Mayer*, No. 17-15435, — F.3d —, 2018 WL 3384950, at *4–5 (9th Cir. July 12, 2018) (holding that section 47(b) of the Investment Company Act of 1940 does not create an implied private cause of action).[5]

---

[5] We reject Segalman's arguments that *Sandoval*'s holding (1) is limited to disparate-impact claims and (2) has been eroded by *Texas Department of Housing and Community Affairs v. Inclusive*

After *Sandoval*, four of our sister circuits concluded that the ACAA does not create an implied private cause of action. The Second, Fifth, Tenth, and Eleventh Circuits reasoned that Congress's express provision of specific administrative and judicial methods of enforcing the ACAA indicates that Congress did not also intend to create a private cause of action. *See Stokes v. Southwest Airlines*, 887 F.3d 199, 202–03 (5th Cir. 2018); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1270 (10th Cir. 2004); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354 (11th Cir. 2002). In addition, those courts viewed the pre-*Sandoval* Fifth and Eighth circuit cases as relying too heavily on the non-dispositive *Cort* factors as well as contemporary legal context and legislative history. The Eleventh Circuit noted that "both [*Tallarico* and *Shinault*] were based on analyses of all four of the *Cort* factors; neither focused exclusively on whether Congress intended to create such a right to sue." *Love*, 310 F.3d at 1359. The Tenth Circuit agreed that, after *Sandoval*, the "focus on the broad remedial purpose underlying a statute—to the exclusion of its text and its place in the legislative scheme at issue—is no longer warranted."

---

*Communities Project, Inc.*, 135 S. Ct. 2507 (2015). First, we have repeatedly applied *Sandoval* outside the disparate-impact context. *See, e.g.*, *UFCW*, 2018 WL 3384950, at *3–5 (applying *Sandoval* to the Investment Company Act); *Logan*, 722 F.3d at 1169 (applying *Sandoval* to the Protecting Tenants at Foreclosure Act). Second, *Inclusive Communities Project* did not address implied causes of action, let alone alter the *Sandoval* framework in favor of a test focused on general statutory purpose, as Segalman contends. Instead, the Court held that disparate impact claims are cognizable under the Fair Housing Act, *Inclusive Cmtys.*, 135 S. Ct. at 2525, which contains an express private cause of action, *see* 42 U.S.C. § 3613. The Supreme Court recently reaffirmed the general applicability of the *Sandoval* framework in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017).

*Boswell*, 361 F.3d at 1269.   Similarly, the Second Circuit declined to follow *Tallarico* and *Shinault*, noting that both "relied significantly on the ACAA's legislative history to recognize an implied right."   *Lopez*, 662 F.3d at 597. Finally, subsequent to argument in this case, the Fifth Circuit revisited its decision in *Shinault* and concluded that *Sandoval* "now mandates a different result."   *Stokes*, 887 F.3d at 200–01; *see also id.* at 204 ("To say that *Sandoval* 'unequivocally' abrogated *Shinault* is, if anything, an understatement.").**[6]** For the reasons that follow, we agree with the post-*Sandoval* decisions of our sister circuits and join them in holding that the ACAA does not create an implied private cause of action.

### B.

Applying *Sandoval*, we conclude that Congress did not intend to create an implied private cause of action to remedy violations of the ACAA.   First, Congress's express provision of multiple methods of enforcing the ACAA other than through a private cause of action indicates that Congress did not intend to create one.   Second, to the extent legislative history is relevant, it does not sufficiently express a contrary intent.

### 1.

We first consider the text and structure of the ACAA. *See Logan*, 722 F.3d at 1171.  It is undisputed that the ACAA

---

**[6]** Although the Eighth Circuit has not revisited its pre-*Sandoval* decision in *Tallarico*, a district court in that circuit concluded that *Tallarico* is no longer binding and declined to follow it.  *See Wright ex rel. D.W. v. American Airlines, Inc.*, 249 F.R.D. 572, 574–75 (E.D. Mo. 2008).

does not expressly provide for a private cause of action. Thus, in our search for legislative intent, we turn to the statute's structure.**[7]** *See Sandoval*, 532 U.S. at 290; *UFCW*, 2018 WL 3384950, at *4–5.

At this step, *Sandoval* instructs that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." 532 U.S. at 290. "Sometimes the suggestion is so strong that it precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute . . . suggest the contrary." *Id.* (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985)). As relevant here, a statute's remedial scheme may foreclose a private cause of action even where the scheme does not provide a method for aggrieved individuals to recover compensatory relief otherwise. *See Transamerica Mortg.*

---

**[7]** We have at times started an implied cause of action analysis by determining whether the statute speaks in terms of "rights-creating language." *See, e.g.*, *Northstar Fin. Advisors*, 615 F.3d at 1115; *In re Digimarc*, 549 F.3d at 1231–32. That approach, however, is not necessary in this case. As the Supreme Court has clarified, "even where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private *right* but also a private *remedy*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (internal quotation marks omitted); *see also Pittman v. Or., Emp't Dep't*, 509 F.3d 1065, 1074 (9th Cir. 2007) (noting "the clarity of the Supreme Court's recent command in *Gonzaga* regarding the insufficiency of rights-creating language with regard to the implication of a private cause of action"). Here, regardless of whether the ACAA contains rights-creating language, we conclude that Congress did not intend to create a private cause of action. *See Sandoval*, 532 U.S. at 290 ("[S]ome remedial schemes foreclose a private cause of action to enforce even those statutes that admittedly create substantive private rights.").

*Advisors, Inc. v. Lewis*, 444 U.S. 11, 19–21 (1979) (cited approvingly by *Sandoval*, 532 U.S. at 290).

In *Transamerica*, the Supreme Court held that the remedial scheme of the Investment Advisers Act of 1940 foreclosed a private cause of action for damages even though there was no other means by which individuals could recover such relief. *Id.* The Court reasoned that Congress's express provision of certain remedies and enforcement methods—administrative penalties, an agency cause of action to enjoin statutory violations, and criminal penalties for willful violators—made it "highly improbable that Congress absentmindedly forgot to mention an intended private action." *Id.* at 20 (internal quotation marks omitted).

We subsequently applied this reasoning in *Northstar Financial Advisors* and *UFCW* to hold that certain sections of the Investment Company Act of 1940 ("ICA") did not imply a private cause of action. In *Northstar Financial Advisors*, we stated that "Congress expressly authorized the [Securities and Exchange Commission] to enforce all of the provisions of the Act by granting the Commission broad authority to investigate suspected violations; initiate actions in federal court for injunctive relief or civil penalties; and create exemptions from compliance with any ICA provision, consistent with the statutory purpose and the public interest." 615 F.3d at 1116. "This thorough delegation of authority," we concluded, "strongly suggests Congress intended to preclude other methods of enforcement." *Id.* at 1116–17. Most recently, in *UFCW* we held that a different section of the ICA similarly did not imply a private cause of action in light of the ICA's "detailed statutory scheme." 2018 WL 3384950, at *4–5.

The same reasoning applies here. As in *Transamerica*, *Northstar Financial Advisors*, and *UFCW*, Congress has

delegated broad authority to the Department of Transportation ("DOT") to enforce the ACAA. *See* 49 U.S.C. § 41705. In addition, Congress has granted individuals a limited express right to judicial review of agency adjudications. *See id.* § 46110.

As for administrative enforcement, the ACAA provides that the Secretary of Transportation "shall investigate each complaint of a violation" of the ACAA, "publish disability-related complaint data in a manner comparable to other consumer complaint data," and "regularly review all complaints received by air carriers alleging discrimination on the basis of disability and . . . report annually to Congress on the results of such review."[8]  *Id.* § 41705(c)(1)–(3).[9] Further, the general FAA enforcement scheme provides that the Secretary of Transportation may, upon notice of and opportunity for hearing, issue an order to compel compliance with the ACAA, *see id.* § 46101(a)(4), revoke an air carrier's

---

[8] The ACAA's implementing regulations explain how such complaints should be filed, 14 C.F.R. § 382.159, and require that air carriers designate at least one Complaints Resolution Official ("CRO") at every airport, *id.* § 382.151. In addition, upon receiving a complaint, a CRO "must promptly take dispositive action," including the following: "whatever action is necessary to ensure compliance" with ACAA regulations; if an alleged violation has already occurred, "provide to the complainant a written statement setting forth a summary of the facts and what steps, if any, the carrier proposes to take in response to the violation"; and "inform the complainant of his or her right to pursue [a] DOT enforcement action." *Id.* § 382.153.

[9] Although subsection (c) was only added to the ACAA in 2000, *see supra* note 2, the general FAA regulatory scheme previously granted— and still grants—the Secretary of Transportation authority to investigate ACAA complaints where a "reasonable ground" appears for doing so. *See* Pub. L. No. 103-272, § 46101, 108 Stat. 745, 1226 (1994) (codified as amended at 49 U.S.C. § 46101); Pub. L. No. 85-726, Title X, § 1002, 72 Stat. 781, 788 (1958) (predecessor statute).

transportation certificate, *see id.* § 41110(a)(2)(B), and/or impose a penalty of up to $10,000 per violation, *see id.* § 46301(a)(5)(B).          In addition, the Secretary of Transportation—or, upon request from the Secretary of Transportation, the Attorney General—has an express cause of action to enforce the ACAA and its implementing regulations. *Id.* §§ 46106, 46107(b).

Finally, individuals who have a "substantial interest" in DOT's administrative decision may file a petition for review of that decision in a United States Court of Appeals. *Id.* § 46110(a). The reviewing court has "exclusive jurisdiction to affirm, amend, modify, or set aside any part" of the Secretary's order; the court may order DOT "to conduct further proceedings"; and the court "may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists." *Id.* § 46110(c). In light of the multiple methods expressly provided for enforcing the ACAA's prohibition against disability discrimination, we must infer that Congress intended to preclude a private cause of action.

We reject Segalman's invitation to discount the ACAA remedial scheme on the ground that it is ineffectual as a practical matter. In support of this argument, he cites the Secretary of Transportation's annual reports to Congress between 2005 and 2012. Despite the statutory mandate that "[t]he Secretary *shall* investigate each complaint," *id.* § 41705(c)(1) (emphasis added), most of those reports state that "[t]he substance of the complaints filed with the [air] carriers has not been reviewed to determine whether the incidents constituted violations of the [ACAA] or [its implementing regulations]" because "[s]uch an undertaking would require resources well beyond [DOT's] investigative

capabilities."[10]   Segalman's argument falls short because DOT's limited enforcement capabilities and efforts, however concerning, do not shed light on Congress's intent when setting out the ACAA remedial scheme.  Nor may we infer a private cause of action under a statute simply because the agency tasked with enforcement does not live up to its mandate.  *See Ziglar*, 137 S. Ct. at 1855–56; *Sandoval*, 532 U.S. at 287.  Although any alleged administrative neglect may be challenged separately,[11] it may not be relied upon by courts to infer the creation of a private cause of action.[12]

---

[10] The Secretary's annual reports are publicly accessible at *Annual Report on Disability-Related Air Travel Complaints*, U.S. Dep't of Transp.,   https://www.transportation.gov/airconsumer/annual-report-disability-related-air-travel-complaints (last updated Sep. 26, 2017).

[11] Segalman is mistaken in asserting that the Secretary of Transportation's decision not to investigate complaints is unreviewable under *Heckler v. Chaney*, 470 U.S. 821 (1985).  As we noted in *Gilstrap*, "[a]lthough the general FAA enforcement scheme provides for an investigation only 'if a reasonable ground appears,' 49 U.S.C. § 46101(a)(1)–(2), the ACAA itself requires the Secretary to investigate all complaints of an ACAA violation."  709 F.3d at 1001 n.8.  Thus, we agree with the Eleventh Circuit that "[t]he decision whether to investigate is . . . *not* discretionary and is subject to judicial review." *Love*, 310 F.3d at 1356 n.11.

[12] We also reject Segalman's argument that a DOT webpage indicates that Congress intended to create a private cause of action.  The webpage, which is still publicly accessible, states in relevant part: "To obtain a personal monetary award of damages, a[n] [ACAA] complainant would have to institute a private legal action."  *Complaints Alleging Discriminatory Treatment against Disabled Travelers under the Air Carrier Access Act and 14 CFR Part 382*, U.S. Dep't of Transp., https://www.transportation.gov/airconsumer/complaints-alleging-discriminatory-treatment-against-disabled-travelers (last updated Jan. 7, 2015).  As an initial matter, that statement may be referring, accurately,

**2.**

Segalman argues that, like the Fifth and Eighth Circuits prior to *Sandoval*, we should rely on the ACAA's legislative history to recognize an implied private cause of action. Although the legislative history does not expressly mention a private cause of action, Segalman points to a senate report stating that Congress enacted the ACAA in response to the Supreme Court's holding that the Rehabilitation Act of 1973 does not apply to private air carriers unless they receive direct federal subsidies. *See* S. Rep. No. 99-400, at 1–2. At the time of the ACAA's enactment, a number of circuits—including this one—had held that the Rehabilitation Act creates an implied private cause of action. *See Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 425 (3d Cir. 2004) (collecting cases). Thus, Segalman argues, Congress also intended that the ACAA create an implied private cause of action. *See Tallarico*, 881 F.2d at 570.

At one time such reasoning may have carried the day, but that time has passed. In light of the suggestion of legislative

_____

to private tort actions that exist under state law and in which the ACAA provides the standard of care. *See Gilstrap*, 709 F.3d at 1010 (holding that the ACAA and its implementing regulations preempt state tort law standards of care "with respect to the circumstances under which airlines must provide assistance to passengers with disabilities in moving through the airport"). Moreover, even if the DOT webpage refers to a purported private legal action directly under the ACAA, this passing reference cannot, itself, give rise to a private cause of action. *Cf. Sandoval*, 532 U.S. at 291 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). In so concluding, we need not and do not decide whether, and to what extent, an agency's express interpretation that a statute implies a private cause of action is entitled to deference.

intent in the ACAA remedial scheme, we "look to legislative history only . . . if there is a clearly expressed contrary intention . . . that may overcome the strong presumption that the statutory language represents congressional intent." *Logan*, 722 F.3d at 1171. Although we also generally "presume that Congress acts with awareness of relevant judicial decisions," *United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1065 (9th Cir. 2007) (internal quotation marks omitted), under the post-*Sandoval* framework such a presumption alone cannot substitute for a clear expression of congressional intent. Moreover, even if it could, the ACAA's legislative history is equivocal evidence, at best, that Congress intended to regulate air carriers that do not receive direct federal subsidies to the same extent as those that do.[13] *Compare* 132 Cong. Rec. S9899 (Daily ed. July 30, 1986) ("[T]he purpose of the [ACAA] is quite simple. It overturns the recent Supreme Court decision in [*PVA*].") (Statement of Sen. Bob Dole), *with* S. Rep. No. 99-400, at 2 (explaining that the final bill "would *mitigate* the effect of . . . *PVA*" (emphasis added)), *and* 132 Cong. Rec. S9899 (explaining that the final bill reflected a "compromise" between the Rehabilitation Act framework and the existing aviation regulatory scheme). In sum, the ACAA's legislative history is insufficient to overcome the strong

---

[13] We further note that Congress's intent to regulate air carriers that receive direct federal subsidies differently from air carriers that do not receive such subsidies is manifested in differences between the Rehabilitation Act and ACAA statutory frameworks. *See Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 425–26 (3d Cir. 2004) (discussing the history and structure of the Rehabilitation Act, and recognizing that the statute creates an implied private cause of action).

suggestion that the statute's remedial scheme forecloses an implied private cause of action.

## IV.

In holding that the ACAA does not create an implied private cause of action, we necessarily do not decide whether such a cause of action would be wise or desirable as a policy matter. We must leave such matters for Congress.[14] Nor may we ground our holding in the legal framework that prevailed at the time of the ACAA's enactment or in preceding decades. We are bound by current Supreme Court law, and under that law, a private cause of action does not exist where the statute in question does not manifest Congress's intent to create one. *Sandoval*, 532 U.S. at 286–87. For all of the above reasons, the ACAA does not manifest such intent. Thus, the district court did not err in concluding that the ACAA does not imply a private cause of action.[15]

**AFFIRMED.**

---

[14] We note, in fact, that the House and Senate have recently introduced bills that would add an express private cause of action to the ACAA. *See* Air Carrier Access Amendments Act of 2018, H.R. 5004, 115th Cong. § 4(a) (as introduced in the House, Feb. 13, 2018); Air Carrier Access Amendments Act of 2017, S. 1318, 115th Cong. § 4(a) (as introduced in the Senate, June 8, 2017).

[15] Because we conclude that the ACAA does not imply a private cause of action, we do not reach the district court's alternative conclusion that, even if such a cause of action existed, Segalman failed to state a claim under Rule 12(b)(6) by not pleading exhaustion of administrative remedies.